George D. Yaron, ESQ. (State Bar #96246)
James I. Silverstein, ESQ. (State Bar #143543)
gyaron@yaronlaw.com;
jsilverstein@yaronlaw.com
**YARON & ASSOCIATES**
1300 Clay St., Suite 800
Oakland, California 94612
Telephone: (415) 658-2929
Facsimile: (415) 658-2930
Attorneys for Plaintiff
AMERICAN CONTRACTORS INSURANCE
COMPANY RISK RETENTION GROUP

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CONTRACTORS INSURANCE COMPANY RISK RETENTION GROUP<br><br>Plaintiff,<br><br>v.<br><br>GRANITE STATE INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY, and NATIONAL CONTINENTAL INSURANCE COMPANY<br><br>Defendants. | **Case No.**<br><br>**COMPLAINT FOR**<br><br>**(1) DECLARATORY RELIEF REGARDING THE DUTY TO DEFEND**<br>**(2) EQUITABLE CONTRIBUTION REGARDING THE DUTY TO DEFEND**<br>**(3) DECLARATORY RELIEF REGARDING THE DUTY TO INDEMNIFY** |

Plaintiff, AMERICAN CONTRACTORS INSURANCE COMPANY RISK RETENTION GROUP ("ACIC" or "Plaintiff"), pursuant to Federal Rules of Civil Procedure, Rule 57, and the Uniform Declaratory Judgments Act, alleges against Defendants GRANITE STATE INSURANCE COMPANY ("GRANITE"), LEXINGTON INSURANCE COMPANY ("LEXINGTON"), and NATIONAL CONTINENTAL INSURANCE COMPANY ("NCIC") herein, as follows:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter, pursuant to 28 U.S.C. § 1332, since there is complete diversity of citizenship among the parties, and since the amount in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000.00). To date, ACIC has incurred more than $365,000 in fees/costs defending Shimmick Construction Co., Inc., ("Shimmick"), and Shimmick/Meyer & Sons JV ("Shimmick JV") against the case, captioned *Anthony Michaelides v. State of California, et al,* Los Angeles County Superior Court, Case No. BC592290 ("the Underlying Action").

2.      Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(2), in that the events or omissions giving rise to this claim occurred in this District, and the accident that is the subject of the Underlying Action, took place in this District.

3.      ACIC is a Risk Retention Group organized and existing under the laws of the State of Texas.  ACIC has its principal place of business in the State of Texas, and engages in the business of insurance.

4.      ACIC is informed and believes, and thereon alleges, that Defendant GRANITE is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in the State of New York,  and engages in the business of insurance.

COMPLAINT FOR DECLARATORY RELIEF AND EQUITABLE CONTRIBUTION

5.     ACIC is informed and believes, and thereon alleges, that Defendant LEXINGTON is  a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of Massachusetts, and engages in the business of insurance.

6.     ACIC is informed and believes, and thereon alleges, that Defendant NCIC is a corporation organized and existing under the laws of the State of New York, with its principal place of business in the State of Ohio.

## FACTUAL BACKGROUND

### A.     The Underlying Action

7.     The Underlying Action, which was filed on August 24, 2015, concerns a motorcycle accident on June 15, 2014.  Anthony Michaelides allegedly lost control of his motorcycle and was injured.  Mr. Michaelides contends that the accident was caused by residual construction-related gravel, dirt, and debris on the on-ramp for the northbound direction of the I-710 Freeway at Atlantic Blvd., in the City of Bell, in southern California.  Allegedly, Mr. Michaelides lost control of his motorcycle, traveled to the right, hit a short concrete barrier, and fell 80 feet down off the on-ramp onto Atlantic Blvd.

8.     ACIC is informed and believes that Shimmick, and Shimmick JV, at the time of the motorcycle accident, were involved in the widening and repaving of the 710 Freeway, in close proximity to where the motorcycle accident occurred. ACIC is informed and believes that Shimmick JV, was the general contractor, and

Shimmick was also involved in overseeing the project.  (Hereinafter, Shimmick JV, and Shimmick will collectively be referred to as the "Shimmick Entities".)

9.    The Underlying Action Complaint contains causes of action against the Shimmick Entities for negligence and public nuisance. The Underlying Action Complaint also contains a cause of action for Dangerous Condition of Public Property against the State of California, with whom,  Shimmick JV contracted to perform work on the project.

10.    In the Underlying Action, the Shimmick Entities filed a Cross-Complaint, and named as Cross-Defendants Hard Hat Sweeping, Inc. (a subcontractor that Shimmick JV hired to sweep the roadway, including adjacent roadways where the project was taking place, free of construction-related debris such as dirt and gravel), and CPR Trucking, Inc., (a hauling subcontractor that Shimmick JV hired to transport concrete, gravel, dirt, and other construction-related items to and from the project).

11.    The Hard Hat Sweeping, Inc., and Shimmick JV agreement is dated July 26, 2012 and, in part, provides:

*** 

This Agreement is made between Shimmick/Myers and Sons

JV (Contractor) and Hard Hat Sweeping Inc. (Subcontractor).

The work described in Section 1 below shall be performed in

accordance with the prime contract between Contractor and

4

**COMPLAINT FOR DECLARATORY RELIEF AND EQUITABLE CONTRIBUTION**

(Owner) and in accordance with all plans, specifications and other documents attached to or incorporated into the prime contract for the project known as: Caltrans Contract# 07-202114 Route 710 and located at Route 710 at Var. Loc. from LA River Bridge to Ramona Blvd UC.

SECTION 1. SCOPE. Subcontractor agrees to furnish all labor, materials, equipment and other facilities required to complete the following work: Sweeping

***

SECTION 5. INDEMNIFICATION. To the fullest extent permitted by law, Subcontractor shall defend, indemnify and hold harmless Owner and Contractor and their agents and employees from claims, demands, causes of actions and liabilities of every kind and nature whatsoever, including actual attorney fees, arising out of or in connection with Subcontractor's operations performed under this Agreement. Such defense and indemnity applies to the negligence or willful misconduct of the Subcontractor or anyone employed directly or indirectly by Subcontractor. This defense and indemnification shall extend to claims occurring after this

COMPLAINT FOR DECLARATORY RELIEF AND EQUITABLE CONTRIBUTION

Agreement is terminated as well as while it is in force. The defense and indemnity shall apply regardless of any active and/or passive negligent act or omission of Owner or Contractor, or their agents or employees, but Subcontractor shall not be obligated to defend or indemnify any party for claims arising from the sole negligence or willful misconduct of Owner or Contractor or their agents or employees, or arising solely by the designs provided by such parties. The defense and indemnity set forth in this Section shall not be limited by insurance requirements or by any other provision of this Agreement.

\*\*\*

SECTION 6. INSURANCE. Subcontractor shall, at its expense, procure and maintain insurance on all of its operations, with carriers acceptable to Contractor, and in amounts listed, including the following coverages:

6.1 Casualty Insurance

a. Workers Compensation Insurance to cover statutory benefits and limits under the Workers Compensation laws of the jurisdiction in which the Scope of work is to be performed,

and Employers Liability Insurance with minimum limits of $1,000,000.00 for disease, each employee and $1,000,000.00 disease, policy limit b. Commercial General Liability insurance (ISO Form CG 00 01) covering all operations; and, $1,000,000.00 per occurrence and $2,000,000.00 general aggregate. c. Automobile Liability insurance, including coverage for all owned, hired and non-owned automobiles. $1,000,000.00 Combined Single Limit.

All insurance coverages shall be in amounts listed. <u>Subcontractor shall name Contractor as an additional insured under the General Liability policy using ISO Form CG 20 10 (edition 11/85). Subcontractor shall provide certificates of insurance to Contractor prior to commencement of the work</u>. The certificates of insurance shall provide that there will be neither cancellation nor reduction of coverage without thirty (30) days prior written notice to Contractor. The certificate shall reflect all limiting or exclusionary endorsements amending the required ISO Form CG 00 01. The use of such limiting or exclusionary endorsements will be subject to the approval of Contractor. The failure of Contractor to enforce in a timely manner any of the provisions of this Section 9 shall

not act as a waiver to enforcement of any of these provisions at a later date in the performance of this Agreement. [Emphasis added.]

\*\*\*

12.  The CPR Trucking Inc., and Shimmick JV agreement is dated July 20, 2012 and, in part, provides:

\*\*\*

This Agreement is made between Shimmick/Myers and Sons, JV (Contractor) and CPR Trucking Inc. (Subcontractor). The work described in Section 1 below shall be performed in accordance with the prime contract between Contractor and (Owner) and in accordance with all plans, specifications and other documents attached to or incorporated into the prime contract for the project know as: Caltrans Contract# 07-202114 Route 710 and located at Route 710 at Var. Loc. from LA River Bridge to Ramona Blvd UC.

SECTION 1. SCOPE. Subcontractor agrees to furnish all labor, materials, equipment and other facilities required to complete the following work: Trucking

\*\*\*

SECTION 5. INDEMNIFICATION. To the fullest extent permitted by law, Subcontractor shall defend, indemnify and hold harmless Owner and Contractor and their agents and employees from claims, demands, causes of actions and liabilities of every kind and nature whatsoever, including actual attorney fees, arising out of or in connection with Subcontractor's operations performed under this Agreement. Such defense and indemnity applies to the negligence or willful misconduct of the Subcontractor or anyone employed directly or indirectly by Subcontractor. This defense and indemnification shall extend to claims occurring after this Agreement is terminated as well as while it is in force. The defense and indemnity shall apply regardless of any active and/or passive negligent act or omission of Owner or Contractor, or their agents or employees, but Subcontractor shall not be obligated to defend or indemnify any party for claims arising from the sole negligence or willful misconduct of Owner or Contractor or their agents or employees, or arising solely by the designs provided by such parties. The defense and indemnity set forth in this Section shall not be limited by insurance requirements or by any other provision

9

of this Agreement.

***

SECTION 6. INSURANCE. Subcontractor shall, at its expense, procure and maintain insurance on all of its operations, with carriers acceptable to Contractor, and in amounts listed, including the following coverages:

6.1 Casualty Insurance

a. Workers Compensation Insurance to cover statutory benefits and limits under the Workers Compensation laws of the jurisdiction in which the Scope of work is to be performed, and Employers Liability Insurance with minimum limits of $1,000,000.00 for disease, each employee and $1,000,000.00 disease, policy limit b. Commercial General Liability insurance (ISO Form CG 00 01) covering all operations; and, $1,000,000.00 per occurrence and $2,000,000.00 general aggregate. c. Automobile Liability insurance, including coverage for all owned, hired and non-owned automobiles. $1,000,000. 00 Combined Single Limit.

All insurance coverages shall be in amounts listed. Subcontractor shall name Contractor as an additional insured under the General Liability policy using ISO Form CG 20 10

COMPLAINT FOR DECLARATORY RELIEF AND EQUITABLE CONTRIBUTION

(edition 11/85). <u>Subcontractor shall provide certificates of insurance to Contractor prior to commencement of the work</u>. The certificates of insurance shall provide that there will be neither cancellation nor reduction of coverage without thirty (30) days prior written notice to Contractor. The certificate shall reflect all limiting or exclusionary endorsements amending the required ISO Form CG 00 01. The use of such limiting or exclusionary endorsements will be subject to the approval of Contractor. The failure of Contractor to enforce in a timely manner any of the provisions of this Section 9 shall not act as a waiver to enforcement of any of these provisions at a later date in the performance of this Agreement. [Emphasis added.]

\*\*\*

13. In part, the Underlying Action Complaint alleged:

\*\*\*

2. On June 15, 2014, Plaintiff MICHAELIDES was seriously injured when his motorcycle became uncontrollable due to gravel, dirt and debris upon the on-ramp of N/B 1-710 Freeway at the Atlantic Blvd. entrance in the City of Bell, CA. Plaintiff's motorcycle lost control, traveled to the right, hit the

short concrete barrier, and caused the Plaintiff to fall approximately 80 feet down on the Atlantic Blvd.

*** 

4. Plaintiff is also informed, believes and thereon alleges that at all relevant times hereto, Defendant SHIMMICK and Does 1 through 100 inclusive, owned, operated, managed, designed, planned, engineered maintained and inspected a construction project in close vicinity of said N/B Atlantic Blvd. entrance to I-710 Freeway in the City of Bell, CA.

5. On June 15, 2014, Defendants STATE, SHIMMICK and Does 1 through 100, inclusive, and/or their management, administrative, designers, planners, engineers, maintenance personnel, inspectors and/or other employees, staff, agents or contractors, acting within the course and scope of their duties and/or employment, permitted said N/B Atlantic Blvd. on-ramp entrance to 1-710 Freeway in the City of Bell, CA to be in disrepair and to constitute a dangerous condition of public property. To wit, at the time of the accident giving rise to this lawsuit, said on-ramp was covered in dirt, gravel and debris. It also lacked proper safety measures failing to include a proper protocol for inspection, maintenance and cleaning of

COMPLAINT FOR DECLARATORY RELIEF AND EQUITABLE CONTRIBUTION

said dirt, gravel and debris as well as proper safety measure such as a guardrail to keep motorcyclists from falling over to the street below. The subject on-ramp was also unsafe due to the failure to provide proper signage warning motorists of said dangers. This was inherently dangerous and created a trap, peculiar risk and nuisance.

6. Defendant STATE, SHIMMICK and Does 1 through 100, inclusive and/or their management, administrative, designer, planner, engineers, maintenance personnel, inspectors and/or other employees, staff, agents or contractors, acting within the course and scope of their duties and through negligent or wrongful acts or omissions created, or allowed to be created, a dangerous condition under Gov. Code §835. It also created a peculiar risk and trap (inadequate warning of dangerous conditions not reasonably apparent to motorists) for those driving northbound on the on-ramp of I-710 Freeway at the Atlantic Blvd. entrance in the City of Bell, CA.

7. Given the turn in the on-ramp immediately adjacent to the incident site, the narrowness of the lanes and/or shoulder area, the steep embankments, and absence of proper signage, a guardrail and/or other safety measures, Defendants and each

of the should have undertaken efforts of measures to warn and/or protect drivers.

8. The collision was foreseeable to the Defendant and yet they failed to warn (or adequately warn) the drivers.

9. The dangerous conditions created reasonably foreseeable risk of the kind of injuries which were sustained, and (s) a negligent or wrongful act or omission of Defendants and each of them, created the dangerous conditions; and/or (b) they had actual or constructive notice of the dangerous conditions sufficient time prior to the injury to have taken measures to protect against such danger which they failed to do.

10. The dangerous conditions and these acts and omissions of Defendants and each of them, (and their management, administrative, designers, planners, engineers, maintenance personnel, inspectors and/or other employees, staff, agents or contractors, acting within the course and scope of their duties), proximately caused Plaintiff's injuries.

11. Further, these dangerous conditions were directly attributable wholly or in substantial part to negligent or wrongful acts of employees of Defendants, and each of them, and these employees had the authority and the funds and other

COMPLAINT FOR DECLARATORY RELIEF AND EQUITABLE CONTRIBUTION

means immediately available to take alternative action which would not have created the dangerous condition, and/or these employees had the authority and it was his/her/their responsibility to take adequate measures to protect against the dangerous condition at the expense of the public as well as private entity and the funds and other means for doing so were immediately available to him/her/them, and he/she/they had actual or constructive notice of the dangerous condition a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

12.   Further, signs, warnings or other devices were necessary to warn of these dangerous conditions which endangered the safe movement of the traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care.

***

22. At all relevant times herein, Defendant SHIMMICK, and DOES 1-100 were engaged in a substantial construction project in the immediate vicinity of the subject N/B on-ramp to 1-710 Freeway where the accident took place. Defendant SHIMMICK, and DOES 1-100 caused massive amounts of

<u>dirt, gravel and debris to accumulate at the scene of the accident. Defendant SHIMMICK, and DOES 1-100, so negligently and recklessly maintained, operated, inspected, designed, failed to clean and control their construction project as to cause the dirt, debris and gravel to spill all around their project, including the subject on-ramp where this accident occurred, causing substantial injuries to the Plaintiff.</u>

23. The dangerous condition was caused, inter-alia, by the inadequate inspection, maintenance, failure to clean and make sure not to spill the dirt, debris and gravel upon the subject on-ramp entrance at the Atlantic Blvd. in the City of Bell, CA. The failure of Defendant SHIMMICK, and DOES 1-100 to inspect and maintain the surroundings of its construction project, as well as the subject on-ramp clean and free from dirt, gravel and debris as well as placement of warning signs, was the primary and/ or substantial factor resulting in the subject accident. Had the DEFENDANTS, and each of them, performed their obligations properly this incident would not have occurred.

24. As a proximate result of said negligence of the Defendants and each of them, Plaintiff MICHAELIDES fell almost 80 feet

and was injured and hurt in his health, strength, and activity, sustaining injuries to his body and shock and injury to his nervous system all of which said injuries have caused and continue to cause him a great deal of mental and physical pain and suffering. Plaintiff is informed and believes and thereon alleges that said injuries will result in permanent disability. [Emphasis added.]

**B.    The Insurance Policies At-Issue and Pertinent Tender Information**

### 1.    ACIC

14. ACIC issued CGL Policy No. GL140039 to Shimmick, which was effective from June 1, 2014 to June 1, 2015 ("ACIC policy").  Shimmick JV is also a named insured under the ACIC policy.  ACIC is defending the Shimmick Entities against the Underlying Action under a "reservation of rights".

15.   In part, the ACIC policy provides:

***

Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a.  Primary Insurance This insurance is primary except when

b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all other insurance by the method described in c. below.

b.  Excess Insurance This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

\*\*\*

(4) That is valid and collectible railroad protective and/or owners and contractors protective liability insurance.

(5) That is valid and collectible liability insurance whether primary, umbrella or excess provided on your behalf by another party such as an owner or subcontractor as a result of that party including you as an insured in its liability policy whether primary, umbrella or excess in compliance with a contract or agreement. However, this insurance applies only if this policy would have provided coverage for you had you not been included as an insured in the other party's liability insurance policy.

(6)  That  is  valid  and  collectible  insurance  covering professional  liability,  errors  and  omissions  liability  or

similar liability exposures.

(7) That is valid and collectible insurance covering contractors pollution liability or similar liability exposures.

(8) That is valid and collectible riggers liability insurance or similar insurance designed to insure liability arising out of movement of property or equipment belonging to others.

***

When this insurance is excess, we will have no duty under Coverages A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all such other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance

COMPLAINT FOR DECLARATORY RELIEF AND EQUITABLE CONTRIBUTION

provision and was not bought specifically to apply in excess

of the Limits of Insurance shown in the Declarations of this

Coverage Part.

*** 

## 2. **NCIC**

16.   In a letter, dated August 28, 2018, Tracy Hughes, an attorney at

Koeller, Nebeker, Carlson, Halluck LLP, ("Koeller"), tendered the Shimmick

Entities' defense to CPR Trucking and its insurers.  (Koeller was retained by ACIC

to defend the Shimmick Entities.   Koeller no longer represents the Shimmick

Entities.   Shaw, Koepke, and Satter has been retained by ACIC to defend the

Shimmick Entities and is currently defending the Shimmick Entities.)   The tender

requested that CPR Trucking forward the tender letter to all of CPR Trucking's

insurers.

17.   In a letter, dated October 31, 2018, NCIC agreed to defend

Shimmick under a "reservation of rights".  Nathan Winegar is coverage counsel for

NCIC, and issued the subject letter.  In part, Mr. Winegar's letter stated:

> Shimmick has advised that CPR Trucking dispatched trucks
>
> to the project on June 9, 10, 11 and 12.  Invoices and bills of
>
> lading submitted by CPR Trucking to Shimmick and
>
> subsequently provided by Shimmick to National Continental
>
> indicate CPR Trucking did not directly operate the trucks but

COMPLAINT FOR DECLARATORY RELIEF AND EQUITABLE CONTRIBUTION

instead relied on subcontractors to do the hauling.

There are also no documents that have been provided to National Continental indicating CPR Trucking dispatched any trucks after June 12, 2014, in conjunction with this specific road construction project.

\*\*\*

The Lawsuit alleges that Shimmick allowed the on-ramp to become covered in dirt, gravel and debris and that Shimmick "lacked proper safety measures" including "failing to include a proper protocol for inspection, maintenance and cleaning of said dirt, gravel and debris." Complaint at ¶5. Shimmick is also accused of lacking proper safety measures such as a guardrail to keep motorcyclists from falling off the on-ramp. Complaint at ¶5. The Lawsuit alleges that Shimmick failed to provide proper signage to warn motorists of dangers. Complaint at ¶5. The Lawsuit claims Shimmick "negligently and recklessly maintained, operated, inspected, designed, failed to clean and control" the construction project so as to cause dirt, debris and gravel to spill all around the project, including the subject on-ramp. Complaint at ¶22.

\*\*\*

COMPLAINT FOR DECLARATORY RELIEF AND EQUITABLE CONTRIBUTION

On August 28, 2018, Shimmick Construction Co. and Shimmick/Myers and Sons JV tendered their defense in the Lawsuit to CPR Trucking. The tender letter sought a defense pursuant to the indemnification provision of the Subcontract. The letter also demanded that CPR Trucking send the tender to CPR Trucking's insurance carriers, including Lexington Insurance Company and Axis Surplus Insurance Company. That letter was subsequently forwarded to National Continental, which constituted National Continental's first notice of loss for this claim.

\*\*\*

National Continental Insurance Company issued a Truckers insurance policy number CP71207733 to CPR Trucking, Inc. with effective dates of October 7, 2013 to October 7, 2014 ("Policy"). The Policy's liability coverage has a $1 million combined single limit.

\*\*\*

Shimmick Construction Co., Inc., is named as an additional insured on the policy. Shimmick/Myers and Sons JV is not listed as an additional named insured on the Policy.

Shimmick/ Myers and Sons JV does not appear to be a party to the Subcontract.  National Continental reserves all rights, including the right to deny coverage, to the extent Shimmick/ Myers and Sons JV does not qualify as an insured under the Policy.

Under the Policy's Truckers coverage form [CA 00 12 03 06], National Continental has agreed to pay "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'."  National Continental reserves all rights, including the right to deny coverage, to the extent that the allegations in the Lawsuit do not fall within the scope of this insuring language.  Many, if not all, of the claims asserted against Shimmick Construction in the underlying complaint address Shimmick Construction's alleged mismanagement of the construction site, including failure to clean the site and failure to properly warn motorists of dangers posed by the site.  These allegations to do not assert claims for bodily injury arising out of the ownership, maintenance or use of a

COMPLAINT FOR DECLARATORY RELIEF AND EQUITABLE CONTRIBUTION

covered auto.

\*\*\*

<u>Though its coverage investigation is not yet complete, please</u>

<u>be advised that National Continental agrees to contribute on</u>

<u>an equitable basis to all reasonable post-tender defense costs</u>

<u>reasonably and necessarily incurred in the defense of</u>

<u>Shimmick Construction Co., Inc. in the Lawsuit</u>.

\*\*\*   [Emphasis added.]

18. Despite agreeing to participate in Shimmick's defense, to date, NCIC has not paid for any portion of Shimmick's defense against the Underlying Action in the nearly 2–year period since it agreed to defend Shimmick.

### 3.  GRANITE

19. In a letter, dated August 28, 2018, Ms. Hughes tendered the Shimmick Entities' defense to Hard Hat Construction, Inc., and its insurers.

20. On June 5, 2019, GRANITE, an insurer of Hard Hat Construction, Inc., agreed to provide a defense to Shimmick under a reservation of rights. In part, the letter stated:

York Risk ("York") is the authorized claims administrator for

Granite State Insurance Company ("Granite State"), the

General Liability carrier for Hard Hat Sweeping, Inc. ("Hard

Hat"). Granite State issued a Commercial General Liability

policy to Hard Hat under policy number 02-LX-027559564-3/000 ("Policy") with effective dates 11/21/13 to 11/21/14. We acknowledge receipt of the tender from your client, Shimmick Construction Co., Inc. ("Shimmick") to Hard Hat. We also received a copy of the original Complaint that was filed by plaintiff Anthony Michaelides against Shimmick. <u>For the reasons set forth below, Granite State will provide a defense to Shimmick under a reservation of rights and subject to the terms, conditions and provisions of the Policy.</u>   Our coverage position is more fully explained below.

***

Additional Insured Endorsement, Form CG 20 10 07 04

A. Section II — Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions, or 2. The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

COMPLAINT FOR DECLARATORY RELIEF AND EQUITABLE CONTRIBUTION

B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after.

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

The Insurance Company's Position

The Granite State policy provides coverage to an "insured" for damages for "bodily injury" or "property damage" during the policy period caused by an "occurrence".  Shimmick is not a named insured under the Policy.  However, the Policy

contains endorsement CG 20 10 07 04 Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization. This endorsement modifies the Policy's Section II – Who is an Insured to include the scheduled parties. The endorsement only applies to the purported additional insured's liability for "bodily injury" or "property damage" caused, in whole or in part by Hard Hat's acts or omissions, or the acts or omissions of those acting on Hard Hat's behalf in the performance of Hard Hat's ongoing operations for Shimmick. <u>The Shimmick/Hard Hat contract contains an insurance procurement provision. Therefore Granite State will provide Shimmick with a defense under a reservation of rights</u>. Granite State reserves the right to deny coverage and deny that Shimmick is an additional insured for any liability Shimmick has that is not caused in whole or in part by Hard Hat's ongoing operation for Shimmick. Granite State further reserves the right to deny coverage for any liability Shimmick has for its own independent acts of negligence or wrongful conduct.

We also respectfully deny any claim for contractual indemnity. In this case, Hard Hat contends that they were under contract to

sweep a specific area under the direction of Shimmick's foreman, Ruben. Since Hard Hat was not directed to sweep the area where the accident occurred, Hard Hat had no obligation to sweep same. Also, Hard Hat reported that they own sweepers that sweep dirt/gravel, but not debris. Based on the foregoing, we respectfully deny any claim for contractual indemnity by Shimmick.

The views expressed herein are not intended to be exclusive or exhaustive. Granite State's coverage position is based on the information presently available to us. Nothing contained herein should be construed as a waiver of any rights or defenses whether or not stated herein, which Granite State may possess under its policy and/or applicable law. Any investigation conducted by Granite State regarding the above-referenced lawsuit is subject to all terms, conditions, provisions and limitations of the Granite State policy. Any actions taken by Granite State or its agents, representatives or attorneys do not constitute and are not intended as a waiver of any rights or defenses available to Granite State, whether or not stated herein, that may be available now or at any point in time. Granite State reserves its rights to supplement and/or amend its coverage position at any time and

COMPLAINT FOR DECLARATORY RELIEF AND EQUITABLE CONTRIBUTION

to assert any defenses, whether or not enumerated herein, which

may now or later be applicable.

\*\*\*

21.  Despite agreeing to provide a defense to Shimmick, GRANITE

has never paid for any portion of the fees/costs incurred defending Shimmick against

the Underlying Action.

22. In an e-mail, dated June 9, 2020, Brandon A Howerton, coverage

counsel for GRANITE, advised ACIC:

> Thank you for the below. <u>We have concluded our review of the</u>
> <u>previous position articulated by York on Granite State's behalf</u>
> <u>and respectfully advise Shimmick does not appear to qualify as</u>
> <u>an additional insured. The Granite State policy requires any</u>
> <u>purported additional insured be specifically scheduled as such</u>
> <u>and we have no information Shimmick was scheduled as an</u>
> <u>additional insured or that any such request was ever</u>
> <u>communicated to Granite State</u>. Unless you and/or Shimmick
> have a copy of a validly issued specifically scheduled
> endorsement naming Shimmick as an additional insured under
> the Granite State policy, Granite State will be issuing a
> supplemental position letter under separate cover disclaiming
> coverage.  Pertinent portions of the as-issued policy are attached

COMPLAINT FOR DECLARATORY RELIEF AND EQUITABLE CONTRIBUTION

here for your easy reference.

Because it appears Shimmick does not qualify as an additional insured, coverage was never potentially triggered under the Granite State policy and therefore no obligation ever arose. As such, Granite State respectfully declines to reimburse American Contractors for any defense fees and costs.

\*\*\*

23.   Attached hereto as Exhibit A is a true and correct copy of a Certificate of Liability Insurance, dated November 20, 2013, for GRANITE Policy No.  02-LX-027559564-3 issued to Hard Hat Sweeping, Inc., which was effective from November 21, 2013 to November 21, 2014 ("the GRANITE Policy"), and an Additional Insured Endorsement. The Certificate of Liability Insurance identifies the "Certificate Holder" as "Shimmick/Myers and Sons, JV".   Attached to the Certificate of Liability Insurance is a CG 2010 (07/04) Additional Insured Endorsement, issued in favor of "Shimmick/Myers and Sons, JV".   The Certificate of Liability Insurance and the Additional Insured Endorsement were issued by Marron Insurance Services.

24. Margi Mora, President of Marron Insurance Services, in July of 2020, advised ACIC, through the latter's counsel, that NSM Insurance Group, the Managing General Agent for GRANITE, provided her with blanket authority to

COMPLAINT FOR DECLARATORY RELIEF AND EQUITABLE CONTRIBUTION

identify an entity as an additional insured under the CG 2010 (07/04) Additional Insured Endorsement contained in the GRANITE Policy. Ms. Mora advised that she did not need to seek any specific additional authority to identify an entity as an additional insured under the CG 2010 (07/04) Additional Insured Endorsement. After issuance of such an Endorsement, she advised that she was not required to provide the subject Endorsement to anyone, such as NSM Insurance Group.  As to the Schedule on the CG 2010 (07/04) Additional Insured Endorsement, which lists the "Location and Description of Completed Operations", she was never told that it had to be filled out.

25. In light of the information provided by Ms. Mora, ACIC demanded, in July of 2020, that GRANITE participate in the defense of Shimmick JV against the Underlying Action and reimburse ACIC for past defense fees/costs. To date, GRANITE has not agreed to participate.

### 4. LEXINGTON

26.  In a letter, dated August 28, 2018, Ms. Hughes tendered the Shimmick Entities' defense to LEXINGTON.   The tender letter advised that the Shimmick Entities were additional insureds under LEXINGTON Policy No. 013135870, issued to CPR Trucking, Inc., which was reportedly in effect from February 19, 2014 to February 19, 2015 ("LEXINGTON Policy").

27.    In a letter, dated October 15, 2018, LEXINGTON denied the Shimmick Entities' tender.  In part, the letter stated:

COMPLAINT FOR DECLARATORY RELIEF AND EQUITABLE CONTRIBUTION

In your letter to CPR, you allege that CPR was responsible, under its contract with Shimmick, for the removal of the debris from this alleged construction site and therefore, required by this contract to defend and indemnify Shimmick in this lawsuit.

Attached as Exhibit One is relevant language from the Lexington policy.

As an initial matter, contractual defense and indemnity obligations do not trigger coverage under the Lexington Policy. Any contractual indemnity obligation would be addressed upon adjudication of any lawsuit.

Please note that the Lexington policy does contain an Additional Insured Required by Written Contract endorsement. However, an organization is only additional insured with respect to liability arising out of the Named Insured's work or product.

Lexington has reviewed the above referenced T&M Directed Services, Outside Operated Equipment Rental Subcontract Agreement. It is noted that CPR's defense and indemnity obligation "applies to the negligence or willful misconduct of the Subcontractor or anyone employed directly or indirectly by Subcontractor." It is further noted that the Equipment Rental

Subcontract provided to Lexington indicates CPR is only responsible for providing trucks when requested by Shimmick and it is not required to do any clean up or other work for the project.

We have also been provided documentation that indicates that CPR performed no work for Shimmick at this project on the date of loss and in fact, had not been on-site since 6/12/14, three days earlier. Accordingly, it is Lexington's position that the accident in question would not have arisen from any work performed by CPR. Accordingly, based upon the information provided to Lexington there would be no obligation under the terms of the contract for Lexington to provide for the defense and indemnity of or grant additional insured status to Shimmick as it pertains to his lawsuit.

***

Endorsement # 008

ADDITIONAL INSURED REQUIRED BY WRITTEN CONTRACT

A.    Section II - Who Is An Insured is amended to include any person or organization you are required to include as an additional insured on this policy by a written contract or written agreement in effect during this policy period and

COMPLAINT FOR DECLARATORY RELIEF AND EQUITABLE CONTRIBUTION

executed prior to the "occurrence" of the "bodily injury" or "property damage".

B.   The insurance provided to the above described additional insured under this endorsement is limited as follows:

2.   The person or organization is only an additional insured with respect to liability arising out of "your work" or "your product"… [Emphasis added.]

28. In a letter, dated December 17, 2018, Ms. Hughes challenged the denial of the tender.  In part, the letter stated:

Thank you for your correspondence dated October 15, 2018. Please allow this letter to provide further information that I believe is relevant to your tender evaluation/denial. Plaintiff has alleged that he lost control of his motorcycle due to construction debris being on the roadway. He, further, alleges that this debris existed on the roadway due to Shimmick's contractors failing to secure the trucks that were being used to haul materials in and out of the construction area, specifically the staging area located on Atlantic near the subject on-ramp.

There has been witness testimony that in the month prior to the

incident, these trucks exited the staging area dropping construction debris in their wake. The witness further testified that the material existed on the day of the accident and is what caused plaintiff to lose control of his motorcycle. During this time period, CPR Trucking was the only trucking subcontractor for the project. Certainly securing the material that CPR Trucking was contracted to haul would fall within its contracted obligations. Contrary to your position, the duty to defend does not arise upon the adjudication of the merits. Rather, they immediately arise upon the potential or possibility for coverage. These allegations are more than sufficient to trigger the duty to defend under *Crawford v. Weathershield Manufacturing, Inc.* (2008) 44 Cal.4th 541.

Furthermore, as an Additional Insured under the Lexington policy, Lexington is obligated to defend Shimmick when it potentially, or even "possibly", could subject the insured to liability for covered damages. See *Horace Mann Insurance Company v. Barbara B.* (1993) 4 Cal.4th 1076; *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287.

Also as a point of clarification, CPR Trucking also performed work on June 13, 2015, as memorialized by its Non-Negotiable

Bill of Lading and Transportation receipt and invoice 1406-118 of the same date.

I would request that you reconsider your denial of Shimmick Construction's and Shimmick/Myers & Sons JV's tender of defense and indemnity in light of the foregoing.

29. To date, LEXINGTON has not responded to Ms. Hughes' correspondence. Counsel for ACIC sent a follow-up tender letter to LEXINGTON on July 9, 2020, requesting that LEXINGTON reconsider its coverage position. To date, LEXINGTON has not responded to the recent correspondence.   In that letter, ACIC's counsel advised LEXINGTON that Shimmick JV was the general contractor involved in widening and repaving the 710 Freeway.  Prior to the accident, CPR Trucking was removing concrete from the 710 Freeway and dumping it in Shimmick's yard near the Atlantic Blvd. exit off the 710 Freeway.   After dumping the concrete, the trucks would enter the 710 Freeway on the subject on-ramp and then proceed to the area where they would pick-up concrete.  In part, the letter stated:

There are bills of lading which indicate that at least some dirt and concrete were transported to the yard near the 710 Freeway & Atlantic Ave., from the 710 Freeway construction project.  There are (1) three bills of lading, dated June 11, 2014, (2) four bills of lading, dated June 12, 2014, and (3) one bill of lading dated, June

13, 2014.  (Attached are copies of the bills of lading.)  June 13, 2014, was a Friday.  June 15, 2014, was a Sunday. [Copies of the above detailed bills of lading and two additional bills of lading are attached to the instant Complaint as Exhibit B]

Based on the bills of lading, it appears that the trucks after dumping the dirt and concrete at the yard would enter the 710 Freeway through the onramp where the accident took place.  To date, no discovery has been conducted concerning this issue.  However, the trucks were making multiple pick-ups of dirt/concrete from the project and delivering it to the yard.  It is possible that some dirt/concrete may have fallen onto the on-ramp when the trucks, which had dumped their loads in the yard, drove on the subject on-ramp to obtain another load of dirt/concrete.  When the trucks entered the 710 Freeway, there may have been left-over dirt/concrete in their beds.  The Complaint, in part, alleges ". . . at the time of the accident giving rise to this lawsuit, said on-ramp was covered in dirt, gravel and debris"

Tracey Ruiz-Juarez testified that she owned a bike store near the location of the accident, and was driving her vehicle at the time of the incident. (Attached please find a copy of her deposition

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

transcript.) She testified that she was several hundred feet behind the Plaintiff's motorcycle when the accident occurred. She testified, beginning on page 390 of volume two of her deposition transcript, that she observed trucks on or around the area of Atlantic Ave. and Bandini Blvd. spilling debris.   She allegedly saw trucks spill debris "maybe the end of 2013, beginning of 2014.  I don't -- in -- in that time frame and even after".  (Page 391, lines 9-10). She said she observed it " . . . maybe five to ten times, maybe a little bit more".  (Page 392, lines 19-20.)  She saw a truck spilling debris at "Atlantic before the underpass as it exited the driveway of the big piles of dirt". (Page 392, lines 23-24.) In that location, she saw a truck spill debris "three to five times, maybe a little more".  (Page 393, line 3.)

On pages 395 and 397 of Ms. Ruiz's deposition transcript, she testified that, immediately after the accident, she saw tan pebbles on the shoulder near the location of the incident.   She also described the debris as gravel/silt.

\*\*\*

In volume one of Ms. Ruiz-Juarez's deposition transcript, at page 49, line 22 to page 50, line 2, she, in part, testified:

Q.  So in your observations on the date of the incident on June

15, 2014 there was a trail of thin or silty kind of dirt on the roadway, and the bigger - - the bigger gravel and sand were off to the sides, is that right?

A. Correct.

Moreover, in volume one of Ms. Ruiz-Juarez's deposition transcript, at page 45, lines 21 to 25, she testified:

Q.  And then there's debris and - - on the day of the incident of June the 15th, 2014 – you know, the gravel, dirt, silt trail went all the way up to and including the freeway on-ramp to the 710?

A.  Yes.

30. Ms. Ruiz- Juarez also testified that, on at least 3 to 5 different days, prior to the day of the subject accident, she saw debris fall from a truck on the on-ramp and deposit debris (dirt, gravel and silt) onto the on-ramp.  As explained above, Ms. Ruiz- Juarez's testimony, the Underlying Action Complaint, and the bills of lading raise the clear and obvious possibility that the work of CPR Trucking resulted in debris on the on-ramp which could have contributed to the accident, which would trigger LEXINGTON's duty to defend.

## **FIRST CLAIM FOR RELIEF**
## **(Declaratory Relief – Duty to Defend Against all Defendants)**

31.    ACIC incorporates herein by reference as though fully set forth herein,

paragraphs 1 through 30 of this Complaint.

32.     ACIC contends, pursuant to the terms, conditions, exclusions, and endorsements of the CGL policies issued by Defendants, as well as equitable principles, that Defendants have a duty to defend Shimmick and/or Shimmick JV as additional insureds, in connection with the Underlying Action, and that Defendants have wrongfully not contributed towards the defense of these entities. ACIC also asserts that, pursuant to the ACIC policy's "Other Insurance" clause discussed above in paragraph 15, depending on the terms of the Defendants' insurance policies, ACIC may not owe Shimmick and/or Shimmick JV a defense.

33.     ACIC is informed and believes, and thereon alleges, that LEXINGTON and GRANITE deny that they have a duty to defend Shimmick and/or Shimmick JV against the Underlying Action. Moreover, NCIC has acknowledged that it owes Shimmick a defense against the Underlying Action, but denied that it owes Shimmick JV a defense against the Underlying Action.  By virtue of these contentions, LEXINGTON and GRANITE deny owing an obligation to contribute toward the defense of Shimmick and/or Shimmick JV against the Underlying Action. As to NCIC, despite acknowledging its obligation to defend Shimmick, it has failed to pay for any of Shimmick's defense.  Moreover, NCIC denies an obligation to contribute toward the defense of Shimmick JV.

34.     Therefore, an actual controversy exists between the parties, requiring a Declaratory Judgment of this Court.

35.   A judicial determination of this controversy is necessary and appropriate in order for the parties to ascertain their rights, duties and obligations under the insurance policies. Wherefore, ACIC prays for judgment against Defendants as set forth below.

## SECOND CLAIM FOR RELIEF
### (Equitable Contribution Defense Fees/Costs Against all Defendants)

36.   ACIC incorporates herein by reference as though fully set forth herein, paragraphs 1 through 35 of this Complaint.

37.   Defendants have an obligation to contribute, on an equitable basis, towards all fees, costs and expenses ACIC has incurred to defend Shimmick and/or Shimmick JV against the Underlying Action.

38.   Defendants each insure Shimmick and/or Shimmick JV, and have a duty to defend Shimmick and/or Shimmick JV, against the Underlying Action. ACIC also insures Shimmick and Shimmick JV.

39.   In providing a defense to the Shimmick Entities against the Underlying Action, ACIC has incurred attorneys' fees and costs and experts' fees and costs in excess of its equitable shares.

40.   Defendants have failed to contribute their fair and equitable shares toward the fees and costs that have been incurred by ACIC in defending Shimmick and/or Shimmick/Myers and Sons, JV, against the Underlying Action. The amounts

due from Defendants for their fair and equitable shares of fees and costs will be according to proof at trial.

41.    Defendants are obligated under the principles of equity to reimburse ACIC for the fees and costs that it has inequitably incurred in defending the Shimmick Entities against the Underlying Action. Wherefore, ACIC prays for judgment against Defendants as set forth below.

### THIRD CLAIM FOR RELIEF
### (Declaratory Relief - Duty to Indemnify Against all Defendants)

41.    ACIC incorporates herein by reference as though fully set forth herein, paragraphs 1 through 41 of this Complaint.

42.    ACIC contends, pursuant to the terms, conditions, exclusions, and endorsements of the CGL policies issued by Defendants to Shimmick and/or Shimmick JV, as well as equitable principles, that Defendants had a duty to indemnify Shimmick and/or Shimmick JV, as additional insureds, in connection with the Underlying Action.

43.    ACIC is informed and believes, and thereon alleges, that all Defendants, deny that they have a duty to indemnify Shimmick and/or Shimmick JV against the Underlying Action.

44.    Therefore, an actual controversy exists between the parties, requiring a Declaratory Judgment of this Court.

45.    A judicial determination of this controversy is necessary and

appropriate in order for the parties to ascertain their rights, duties and obligations under the insurance policies. Wherefore, ACIC prays for judgment against Defendants, as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, ACIC prays for judgment as follows:

1.     For a declaration by this Court that Defendants each have a duty to defend Shimmick and/or Shimmick JV against the Underlying Action.

2.     For reimbursement to ACIC of all fees, costs, and sums expended by ACIC to defend the Shimmick Entities against the Underlying Action in excess of its equitable share, plus pre-judgment interest, such that the Defendants are not unjustly enriched by ACIC. In the alternative, if it is determined that the ACIC policy is excess, then ACIC seeks reimbursement of all defense fees/costs incurred by ACIC defending the Shimmick Entities from Defendants.

3.     For a declaration by this Court that Defendants have a duty to indemnify Shimmick and/or Shimmick JV against the Underlying Action

4.     For general damages in the amount subject to proof;

5.     For AAIC's attorneys' fees and costs incurred in this action;

6.     For pre-judgment and post-judgment interest;

7.     For costs of suit herein; and

//

8.     For such other and further relief as this Court deems just and proper.

DATED: July 31, 2020                     By:   */s/ George D. Yaron*

George D. Yaron
James I. Silverstein
Attorneys for Plaintiff,
AMERICAN CONTRACTORS
INSURANCE COMPANY RISK
RETENTION GROUP

**COMPLAINT FOR DECLARATORY RELIEF AND EQUITABLE CONTRIBUTION**